## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALCRESTA THERAPEUTICS, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>HAYES, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)   **Civil Action No.** _19-10887_<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiff Alcresta Therapeutics, Inc. ("Alcresta"), by its attorneys, alleges as follows.

### **NATURE OF THE ACTION**

1.      This action concerns the false, misleading, and damaging public statements that Defendant Hayes, Inc. ("Hayes") made in a research report it sold to a number of customers, including private health insurers, about Alcresta's medical device, RELiZORB.  Those statements have caused dozens of insurers to deny coverage for the device, and thereby harmed (a) seriously ill patients, who were deprived of a safe and effective therapy that would have helped them, and (b) Alcresta, which lost significant sales.

2.      RELiZORB is a life-changing therapeutic device that facilitates absorption of essential fats in persons suffering from fat malabsorption resulting from pancreatic insufficiency associated with cystic fibrosis and other serious illnesses.  Fat malabsorption can lead to weight loss, malnutrition, significant gastrointestinal problems, decreased caloric intake, reduced digestion of essential fats, vitamin deficiencies, suboptimal brain and vision development, and impaired lung function.

- 1 -

3.      RELiZORB mimics normal pancreatic function by breaking down fats in formula used for enteral tube feeding—*i.e.*, delivery of nourishment directly to a patient's gastrointestinal tract—with the digestive enzyme lipase, which is immobilized on small polymer beads that are contained in, and remain in, the RELiZORB device.  The first human clinical trial of RELiZORB showed statistically significant improvement in fatty acid absorption, frequency and severity of gastrointestinal symptoms from fat malabsorption, and appetite among patients using RELiZORB. A subsequent clinical trial that, together with the prior trial, covered 2% of the target population of cystic fibrosis patients—a larger percentage than many approved cystic fibrosis drug treatments—showed significant increases in omega-3 absorption, higher weight percentiles, and improved or unchanged gastrointestinal symptoms in patients using the device.  Recent studies have confirmed similar therapeutic benefits.

4.      RELiZORB primarily serves an ultra-orphan subset of approximately 3,500 to 3,800 cystic fibrosis patients.  RELiZORB is indicated for use in both pediatric patients (ages 5 years and above) and adult patients to hydrolyze fats in enteral formula.

5.      Before RELiZORB, patients with fat malabsorption had no choice but to rely on oral pancreatic enzyme replacement therapy ("PERT") pills, which are not approved by the U.S. Food and Drug Administration ("FDA") for use with enteral feeding and lack evidence of safety and efficacy in enteral use.

6.      To date, RELiZORB has helped approximately 2,000 patients absorb essential fats, reduce the frequency and severity of gastrointestinal adverse events, and gain weight, all of which are essential to enabling these patients to fight their disease.  The safety of RELiZORB is evident from the fact that patients have used more than 725,000 RELiZORB cartridges without any product recalls and without report of a single adverse event to the FDA.

7.      Defendant Hayes is a for-profit company that prepares and sells research reports about health technologies and their impact on patient safety and clinical outcomes.  Hayes's target customers include health insurers around the country, who use Hayes's research to determine whether to provide insurance coverage for the technology.  Indeed, Hayes markets its reports for that very purpose.

8.      Hayes has published reports about RELiZORB containing materially false and misleading statements, which have wrongly undermined the substantial evidence of RELiZORB's safety and effectiveness and impaired RELiZORB's reputation and brand.  Those statements have also caused a number of private insurers to deny patients coverage for RELiZORB, which has directly harmed patients and Alcresta.  More specifically, the coverage denials have prevented fragile, extremely ill patients from accessing a readily available treatment for which they have no practical alternative.  Alcresta has in turn lost significant sales, and stands to lose millions more.

9.      In this action, Alcresta seeks damages in excess of $75,000, as well as injunctive relief, for Hayes's violations of the common law of commercial disparagement and intentional interference with advantageous economic relations.

## PARTIES

10.     Alcresta is a corporation organized under the laws of the State of Delaware with its principal place of business at One Newton Executive Park, Suite 100, Newton, MA 02462. Alcresta developed and sells RELiZORB.

11.     On information and belief, Hayes is a corporation organized under the laws of the State of Texas with its principal place of business at 2711 N. Haskell Avenue, #1450, Dallas, Texas 75204.

12.     Hayes advertises its products through the Internet, among other means.  Its website, www.hayesinc.com, is accessible from Massachusetts.

13.     Among Hayes's customers are a number of major health insurers.  According to Hayes's website, those insurers cover nearly 200 million lives across the United States, which equates to more than 60% of the population of the United States.  Hayes's clients include Massachusetts-based private health insurers as well as private-health insurers located in other states, which provide health insurance coverage to many Massachusetts residents.  Hayes's actions have caused at least one Massachusetts-based health insurer to deny coverage of RELiZORB to at least one patient located in Massachusetts.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over Alcresta's claims pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

15.     This Court has personal jurisdiction over Hayes because Hayes sold its reports containing materially false and misleading statements about RELiZORB to Massachusetts residents, who have relied on such statements to deny patients insurance coverage for RELiZORB. For example, on information and belief, one Massachusetts-based health insurer, the Boston Medical Center HealthNet Plan ("BMCHNP"), has a policy excluding RELiZORB from coverage based on statements made by Hayes.  On information and belief, more than 300,000 individuals in Massachusetts are insured by BMCHNP.  At least one Massachusetts resident with insurance from BMCHNP has been denied insurance coverage for RELiZORB based on this policy.  Other insurers providing coverage to Massachusetts residents similarly exclude RELiZORB from coverage, in reliance on statements made by Hayes.

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS

## <u>RELiZORB</u>

17.     Exocrine pancreatic insufficiency ("EPI") is a dangerous medical condition characterized by a deficiency in exocrine pancreatic enzymes, which are necessary to digest fats, carbohydrates, and proteins.  EPI can be caused by a variety of serious conditions, including cystic fibrosis, chronic pancreatitis, pancreatic cancer, pancreatic and gastric surgery, diabetes, Crohn's disease, and others.  If left untreated, it can lead to a chronic deficiency of fatty acids in plasma and tissue and cause patients to become increasingly malnourished and underweight.  These patients often suffer from, among other things, respiratory issues, chronic infections, vitamin deficiencies, suboptimal brain and vision development, impaired lung function, and impaired bone health, as well as chronic gastrointestinal symptoms including diarrhea, fatty stools, abdominal pain, nausea, bloating, constipation, flatulence, and vomiting.

18.     The primary treatment for EPI is PERT, in which a patient orally ingests multiple pills per dose (with dosage depending on body weight) with each meal and snack that provides the digestive enzymes the patient lacks.  Although PERT is an effective solution for most patients with EPI who are able to meet their nutritional goals through orally consumed meals and snacks, it is not sufficient for a small, ultra-orphan population of EPI patients who are unable to meet their nutritional goals through oral meals and snacks alone, and therefore require supplemental nutrition through enteral feeding (*i.e.*, through a feeding tube inserted directly into the stomach or small intestine), or who are unable to consume meals and snacks orally.

19.     Enterally fed patients have a port in their abdomen that connects to a tube through which a liquid formula is pumped into the stomach or the small intestine.  The formula is nutritionally complete, meaning that it can serve as the sole source of a patient's nutrition and contains all of the necessary carbohydrates, protein, fat, and vitamins.

20.     Enterally fed patients who suffer from EPI are not, however, able to hydrolyze (digest) fats in the formula.  Formulas containing hydrolyzed fats are unavailable because such fats are unstable if pre-hydrolyzed.  Hydrolyzed fats rapidly turn rancid, and become unpalatable and unusable (*i.e.*, hydrolyzed fats are not shelf-stable).  Over time, these patients become malnourished and are susceptible to the problems referenced above.

21.     Alcresta developed RELiZORB to help this very small "ultra-orphan" population of patients, which Alcresta estimates to include approximately 3,500 to 3,800 patients across the United States.

22.     The RELiZORB cartridge attaches in-line between the port in the patient's abdomen and the pump that delivers the nutritional formula.  The cartridge contains a chamber with small beads that have covalently-bound lipase, which are retained in the cartridge by an inlet and outlet filter.  When the nutritional formula runs over the beads, the lipase causes the fats to hydrolyze/break-down into a form the patient can absorb.

<u>**Clinical Trials and Regulatory Approvals**</u>

23.     On November 20, 2015, the FDA cleared RELiZORB through its *de novo* classification procedure for use by adults.  82 Fed. Reg. 47,969, 47,970 (Oct. 16, 2017) (designating RELiZORB as a Class II device).  The FDA uses its *de novo* procedure for novel devices for which there is no substantially equivalent FDA-approved device already on the market that could serve as a predicate for FDA clearance under section 510(k) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 310.  82 Fed. Reg. at 47,970 (clearing RELiZORB as a Class II device).

24.     In 2016, a group of researchers led by Dr. Steven Freedman, who is a Professor of Medicine at the Harvard Medical School, conducted a multicenter, randomized, double-blind, crossover clinical trial with an open-label safety evaluation designed to assess "the safety,

tolerability, and fat absorption" of RELiZORB. Thirty-three patients, including pediatric patients, completed the trial.

25.     Dr. Freedman and his team published the results from their study in a peer-reviewed article entitled *Increased Fat Absorption from Enteral Formula Through an In-Line Digestive Cartridge in Patients with Cystic Fibrosis* in the Journal of Pediatric Gastroenterology and Nutrition. Ex. 2. Despite having been on an enteral feeding regimen for an average of 6.6 years, the patients' fatty acid levels were still deficient at only 60% of the normal range. They reported that patients showed normalized absorption of fatty acids based on a 2.8-fold increase in plasma omega-3 fatty acid concentrations after a single use of RELiZORB as well as a decrease in the frequency and severity of most symptoms of malabsorption, including abdominal pain, bloating, constipation, diarrhea, gas, indigestion, nausea, fatty stools, vomiting, flatulence, and abdominal gas pain. The peer-reviewed publication of the study's results concluded that RELiZORB was "safe" and "well tolerated" and suggested "an overall increased fat absorption."

26.     In 2016 and 2017, a research team conducted a longer term prospective, multi-center, open-label clinical trial with the goal of evaluating, safety, tolerability, and efficacy of sustained use of RELiZORB over a 90-day period in patients with cystic fibrosis and EPI using enteral nutrition as part of their regular nutrition regimen. Thirty-six patients, ages five to thirty-three, completed the study.

27.     The results of the study were published in a peer-reviewed article entitled *Absorption and Safety with Sustained Use of RELiZORB Evaluation (ASSURE) Study in Patients with Cystic Fibrosis Receiving Enteral Feeding* in the Journal of Pediatric Gastroenterology and Nutrition. Ex. 3. As was observed in the previous trial, the patients who participated in the study also showed similar normalized absorption of fatty acids in plasma. In addition, they experienced

a 2-fold increase in the omega-3 fatty acid index. The omega-3 index was first used as a predictor of cardiovascular outcomes and has been applied to studies of patients with cystic fibrosis because it measures a longer term uptake of omega-3s (DHA and EPA) by red blood cell membranes, a surrogate of tissue absorption. The patients also experienced improvements in weight percentile and a reduction of gastrointestinal symptoms. The study also showed no discontinuation in use and no unanticipated adverse events. The peer-reviewed publication of the results concluded that RELiZORB was found to be "safe" and "well tolerated" and "may have important long-term therapeutic benefits in patients with [cystic fibrosis]."

28.    Each of these trials showed a statistically significant benefit to the study groups without any meaningful adverse effects. Their results are more compelling when taken together because they evaluated close to 2% of the patient population RELiZORB serves. That percentage is much higher than the study populations for medical devices used to treat traditional patient populations, which are often less than 1% of the total patient population. For example, KALYDECO, a cystic fibrosis medication, and GATTEX, a Short Bowel Syndrome medication, each achieved FDA approval after clinical studies of less than 1% of the relevant patient populations.

29.    On July 12, 2017, after receiving additional data and considering additional studies, the FDA expanded its clearance, allowing Alcresta to market RELiZORB for use by pediatric patients who are five years of age or older, in addition to adult patients. *See* Ex. 4, Letter from FDA to Alcresta re: RELiZORB (July 12, 2017). The FDA cited the Freedman study as support for that decision. The FDA concluded that "[t]he clinical study results support the proposed indications for use for RELiZORB to include pediatric patients (ages 5 years and above)." *Id.*

30. The FDA takes special care when allowing clinical trials in pediatric patients to be carried out and in subsequently approving use of a product or device in pediatric populations on a commercial basis. Both of the clinical trials on RELiZORB included pediatric patients. By permitting the inclusion of pediatric patients in the trials, and by subsequently clearing RELiZORB for use in pediatric patients five years of age and older, the FDA has spoken clearly as to RELiZORB's safety.

31. RELiZORB has also met the European Union's strict safety standards. In particular, on May 11, 2018, RELiZORB received a "CE Marking" (FM 647899), which "signif[ies] that [the device has] been assessed to meet high safety, health, and environmental protection requirements." European Commission, *CE Marking*, https://ec.europa.eu/growth/single-market/ce-marking_is (last accessed Apr. 22, 2019).

32. RELiZORB is the only FDA-approved digestive product for use in enteral tube feeding.

**Additional Real World Evidence of Safety and Efficacy**

33. Since the FDA first approved RELiZORB, there have been a number of important case studies and independent analyses published about the device that further demonstrate significant increases in patients' body mass index ("BMI") as well as improved feeding tolerance. For example, in *Use of an In-Line Digestive Cartridge with Enteral Nutrition Improves the Weight Trajectory of Two Children with Cystic Fibrosis Complicated by Another Medical Diagnosis*, published in April 2018, Volume 33, Issue 2 of Nutrition in Clinical Practice, the authors concluded that replacing traditional enzyme therapy with RELiZORB provided a significant therapeutic benefit to patients who were otherwise at high nutrition risk. They further found that

RELiZORB was effective at decreasing malabsorption symptoms and improving weight gain and growth.

34.    Other analyses were presented at the 2017 North American Cystic Fibrosis Conference, and published in November 2017 in Volume 52, Issue S47 of Pediatric Pulmonology. In the analysis entitled *Use of Immobilized Lipase Cartridge with Overnight Enteral Feeds Improves Symptoms and Results in Weight Gain in Children with Cystic Fibrosis*, clinicians C. Iwanicki *et al.* performed a retrospective chart review of seventeen patients between the age of 2 and 21, examining the effects of RELiZORB on symptoms of fat malabsorption and weight change. Ex. 5.  Thirteen of the seventeen patients showed significant reductions in symptoms of malabsorption, and there was a positive average weight change in the three months after the patients used RELiZORB as compared to the three months prior.  *Id.*  Based on those results, the clinicians concluded that, despite the relatively small sample size of the study, RELiZORB was associated with clinically significant positive outcomes.  *Id.*

35.    In another analysis entitled *Use of an In-Line Digestive Enzyme Cartridge in Pediatric Patients*, clinicians S. Hendrix *et al.* treated thirteen pediatric patients with RELiZORB. Ex. 6.  After three months, 83% of the patients had improvement in BMI or weight-for-length percentiles.  *Id.*  After six months, 71% of patients had improvement in BMI percentiles compared to baseline.  Based on the results, the clinicians concluded that "use of [RELiZORB] provides a safe and practical way to deliver absorbable fats from overnight [enteral nutrition].  Use of this device was well tolerated, and promoted weight gain and reduction in [gastrointestinal] symptoms of malabsorption in children age 3 months to 16 years."  *Id.*

36.    In the analysis entitled *Digestive Enzyme Cartridge (RELiZORB^{TM}) During Continuous Enteral Feeds Among Individuals with Cystic Fibrosis*, clinicians M. Minor *et al.*

conducted a chart review of nineteen patients with cystic fibrosis who receive continuous enteral feeds and use RELiZORB.  Ex. 7.  The clinicians utilized a piecewise linear regression model to compare the change of growth overtime from before and after the patients started using RELiZORB.  *Id.*  Although the clinicians did not find the changes in BMI and weight outcomes statistically significant, they found that "there was a positive trend in growth rates after starting RELiZORB."  *Id.*  The clinicians concluded that RELiZORB "represents a novel approach that may help improve clinical outcomes for [their cystic fibrosis] patients."  *Id.*

37.     In addition, on June 8, 2017, Dr. Albert Faro, Senior Director of Clinical Affairs at the Cystic Fibrosis Foundation ("CFF"), testified in support of RELiZORB at the Public Meeting for the Medicare HCPCS coding process.  Dr. Faro testified that:

- "[RELiZORB] is in the best interest of those individuals who require overnight tube feeds to have timely access to this product."

- "RELiZORB is the only product approved to address the significant problem of fat malabsorption in enteral feeding."

- "By having the feed go through the cartridge lined with enzymes, RELiZORB directly addresses the significant unmet need for better absorption of nutrients during overnight feeds in people with [cystic fibrosis] who are pancreatic insufficient."

38.     Moreover, at least seventy-eight hospitals have placed RELiZORB on formulary, which is a list of medical devices and drugs approved by a committee that makes clinical judgments as to safety and efficacy on behalf of the institution.  Those hospitals include preeminent institutions such as the Brigham and Women's Hospital, the Cleveland Clinic Foundation, Northwestern Memorial Hospital, and Stanford University Medical Center.

## Reimbursement Approval by Third-Party Payers

39.     RELiZORB was a very expensive device for Alcresta to develop, and it is expensive to manufacture, support, and market.  Its commercial success, and Alcresta's survival, will in large part depend on the degree to which third-party payers—private or government health insurance—agree to reimburse for RELiZORB because patients who are denied insurance coverage for RELiZORB often forego the device.

40.     As noted, Alcresta estimates that RELiZORB is primarily used in an ultra-orphan patient population of approximately 3,500 to 3,800 patients in the United States.  Although that is a small population, the potential commercial value for RELiZORB is very significant.  Patients who use RELiZORB typically do so for months to years at a time, and many would use RELiZORB for the rest of their lives (as they have a chronic disease for which there is no cure).  As a single-use cartridge, replacement sales are a significant part of the device's commercial value.  For example, since the product was launched, approximately 2,000 patients have used the device.[1] With replacements, those patients account for more than 725,000 RELiZORB cartridges.

41.     From 2016 through late 2018, RELiZORB was technically covered under Medicare and Medicaid plans that follow Medicare rules, but only when provided as part of an enteral supply "kit" or "bundle."  During that period, the Centers for Medicare and Medicaid Services ("CMS") assigned RELiZORB various billing codes that would be covered by the National Coverage Determination ("NCD") for Enteral and Parenteral Nutritional Therapy.

42.     Effective January 1, 2019, RELiZORB has a permanent, separately-billable Medicare billing code (B4105), meaning that RELiZORB is covered and payable by Medicare

---

[1]     Nearly all of the 2,000 patients who have benefitted from RELiZORB have received the device from Alcresta at no cost due to insurance denials.

outside of a kit.  This billing code assignment falls within the NCD for Enteral and Parenteral Nutritional Therapy.

43.     RELiZORB is also covered by approximately 136 private insurers, including, among others, Affinity Health Plan, Anthem BCBS of California, Anthem BCBS of North Carolina, Anthem BCBS of New York, Anthem BCBS of Indiana, Anthem BCBS of Ohio, Anthem BCBS of Kentucky, BCBS Federal Employee Program, BCBS of Georgia, BCBS of Michigan, BCBS of Tennessee, BCBS of West Virginia, Independent Health, Indiana Medicaid, Keystone First, Mutual Health Services, Tennessee Medicaid, Tricare, and ZZ BCBS Pennsylvania.

44.     Although RELiZORB is now covered by Medicare (and Medicaid plans that follow Medicare) and many private insurers, a number of private insurers do not provide coverage. Alcresta has interacted with numerous patients who have been denied coverage by their insurer. Those interactions have reflected that patients who are denied insurance coverage most often are forced to forego RELiZORB, for which there is no alternative FDA-approved drug or medical device.  Moreover, on information and belief, many doctors who would otherwise have prescribed RELiZORB do not do so when they know that their patient's insurance does not cover the device.

45.     A number of insurers' decisions not to cover RELiZORB are directly attributable to the reports Hayes has sold that purport to assess the evidence of the device's safety and efficacy. Indeed, many of the decisions denying patients pre-authorization for RELiZORB specifically cite to Hayes's reports.  These insurance denials have led Alcresta to manufacture smaller quantities of RELiZORB, and wholesalers and pharmacies to purchase smaller quantities of the device.

46.     Rather than deny sick patients access to an important treatment that can substantially improve their health, Alcresta has provided RELiZORB without charge to many

patients whose insurers denied coverage, and, through efforts like this lawsuit to rectify the false and misleading statements in the Hayes report, is working to obtain reimbursement. This has taken a heavy toll on Alcresta, which is not yet profitable and will at some point be unable to continue providing RELiZORB to these patients without charge. Alcresta estimates that it has lost more than $7 million of revenue from insurers that have denied coverage for RELiZORB and have referenced the Hayes Reports in coverage decisions, and that it currently is on pace to continue losing more than $4 million of revenue each year due to such denials.

### Hayes's False and Misleading Reports About RELiZORB

47.     Hayes sells research reports and consulting services to private insurers, hospitals, healthcare systems, government agencies, and employers to help them evaluate the efficacy and value of new medical technologies. Hayes promotes itself as a "trusted partner" of such clients, offering them research reports to, among other things, develop coverage policies and make coverage decisions for new health technologies.

48.     Hayes's customers can purchase such reports individually and/or subscribe to Hayes's Knowledge Center which provides access to all previously issued reports. Hayes describes its Knowledge Center as providing "unbiased information about the impact of health technologies on patient safety and clinical outcomes." Hayes also touts its reports and research as being able to help insurers "develop defensible, transparent coverage policies." On information and belief, the phrase "transparent coverage policies" refers to insurers' practices of basing their coverage decisions in whole or in part on Hayes's research and then citing that research if a patient who was denied coverage objects.

49.     Hayes encourages insurers to rely on its reports by advertising the completeness and comprehensiveness of its research. For example, the Knowledge Center contains a banner advertisement stating, "Do you have time to read all of the literature and figure out what's best

and what's over-hyped?  We do."  It also has a search function that displays results under the banner "information you need to make better decisions."

50.    Among the products Hayes offers in its Knowledge Center are "Search & Summary" reports, which Hayes advertises as the results of a comprehensive literature search. More specifically, Hayes tells insurers and other customers that its "Search and Summary" reports are the product of Hayes's searches of numerous databases as well as its evaluation of "[r]elevant abstracts from English-language, peer-reviewed clinical trials, and review articles . . . along with all available information related to applicable regulatory approvals and national coverage determinations by CMS for a specific technology and major private payers, as well as links to high-quality online information services."

51.    On October 15, 2018, Hayes published a Search & Summary Report about RELiZORB (the "2018 Report").  Ex. 1.  The 2018 Report expressly recognized that it "will be used for support of [insurer] coverage determinations and policy development."  *Id.* at 2.

52.    The 2018 Report stated that there was "insufficient published evidence" to "assess the safety and/or impact [of RELiZORB] on health outcomes or patient management," and falsely portrayed that statement as an objective, unbiased conclusion that considered, among other things, "all available information related to applicable regulatory approvals and national coverage determinations by CMS for a specific technology and major private payers."  In fact, Hayes supported its conclusion, to the extent it was supported at all, with a series of false and misleading statements as to the types of evidence Hayes tells insurers they should consider as part of a coverage assessment.

53.     For example, the 2018 Report's "At a Glance" summary falsely and misleadingly summarized RELiZORB's acceptance among private insurers through its summary of "Payer Coverage."

      a.     The 2018 Report states that Hayes was able to identify four private insurers (Aetna, Cigna, Humana, and UnitedHealthcare) "that address the use of Relizorb for patients receiving enteral nutrition" and that "[a]ll [of them] consider the use of Relizorb investigational, experimental, and/or unproven." Ex. 1 at 2. That statement, particularly when read in the context of Hayes's description of Search & Summary reports as comprehensive surveys of "all major private payers," was false and misleading. As noted above, numerous "major private payers" have determined that RELiZORB is safe and effective including, among others, Anthem, a number of Blue Cross Blue Shield plans, UnitedHealthcare Community, Tricare, and Affinity. On information and belief, those private payers are among Hayes's many insurer clients and their coverage position was known or available to Hayes.

      b.     Hayes also falsely and misleadingly implied that Medicare and Medicaid do not cover RELiZORB. It reported: "No National Coverage Determination (NCD) for Relizorb was identified on the Centers for Medicare & Medicaid Services (CMS)." Ex. 1 at 2. In fact, there is a long-standing NCD for Enteral and Parenteral Nutritional Therapy (180.2), with an effective date of July 11, 1984, that covers RELiZORB. The NCD states expressly that if the patient is qualified for enteral nutrition therapy, "related supplies, equipment and nutrients" are also covered. RELiZORB's "Product and Service Code" in the relevant Medicare database is "PE04: Enteral Equipment and/or Supplies." RELiZORB is thus directly covered under the NCD, and has been for years.

54.     The "At a Glance" summary page also contained a field for "CE Marking."  Hayes stated that "RELiZORB is available for sale only in the United States," Ex. 1 at 2, giving the false and misleading impression that the device had not received a CE Marking certifying that it meets the European Union's safety standards.  In fact, as was available from regulatory databases to which Hayes had access, RELiZORB received a CE Marking (FM 647899) on May 11, 2018.

55.     The Report also contains other false and misleading statements.  For example, Hayes falsely reported that its literature review located only "a small amount of evidence pertaining to the use of Relizorb for patients receiving [enteral nutrition]."  Ex. 1 at 5.  It went on to undermine the significance of the RELiZORB clinical trials, and their conclusions that RELiZORB was "safe" and "well tolerated," by dismissing them as having an overlap of authors and study populations.  But as Hayes knows, the subjects of these studies represent a significant number of potential patients in the case of a device for an ultra-orphan population.  Indeed, the studies cover nearly 2% of the target population, which is very significant for a clinical trial and which Hayes fails to note.

56.     Hayes's prior Search & Summary reports for RELiZORB were also false and misleading.  For example, the report published on August 31, 2017 (the "2017 Report") reached the same conclusion as the 2018 Report based on similarly false and misleading statements.  For example, in the "At a Glance" section on "Payer Coverage," the 2017 Report states that "[n]o National Coverage Determination (NCD) for Relizorb was identified on the Centers for Medicare & Medicaid Services (CMS) website."  Ex. 8 at 2.  At the time of publication, RELiZORB was covered by the NCD on enteral feeding, and was assigned a valid Medicare billing code.

**Hayes's False and Misleading Reports Have Caused**
**Great Harm to Seriously Ill Patients and Alcresta**

57.     On information and belief, Hayes's false and misleading Reports have caused more than 20 private health insurers to deny coverage of RELiZORB, including insurers in Massachusetts and other states.

58.     Many such insurers have specifically cited Hayes Reports in support of their decisions to deny coverage for RELiZORB, either as part of a policy or in denials of pre-authorizations of coverage for patients in need of RELiZORB.  The many denials of coverage Alcresta has received that specifically reference the Hayes reports include the following:

    a.     On information and belief, BMCHNP has denied prior authorization for RELiZORB based on statements made by Hayes.

    b.     The Cigna policy on Nutritional Support states that RELiZORB "is considered experimental, investigational or unproven" and cites the 2017 Report.

    c.     The Humana Medical Coverage Policy for Durable Medical Equipment lists RELiZORB as "NOT COVERED – experimental/investigational," and cites the 2018 Report.

    d.     A service denial notification to a patient covered by Absolute Total Care stated:  "*Hayes Criteria updated October 2018* list this device as not having enough published evidence in the medical books and journals to know what the effect will be on safety and long term health outcomes on humans" (emphasis added).

    e.     A service denial notification to a patient covered by The Health Plan stated: "After second medical review the RELiZORB your doctor ordered is experimental.  The Health Plan Rules for New Technology *(Hayes)* was used to review this request" (emphasis added).

f. A service denial notification to a patient covered by the Physicians Health Plan stated: "*Per the Hayes Rating System:* there is insufficient published evidence to assess the safety and/or impact on health outcomes or patient management regarding the use of Relizorb" (emphasis added).

g. A service denial for a patient covered by Fidelis stated: "*Per Hayes Inc*: There is insufficient published evidence to assess the analytical and clinical validity of the test. Medical necessity was not met and is denied" (emphasis added).

h. A service denial for a patient covered by Home State Health stated: "Per current available information *using Hayes clinical evidence and guidelines* - we note that there is not enough literature published on the use of Relizorb in lieu of the current existing treatment options for patients with Cystic fibrosis" (emphasis added).

i. A service denial for a patient covered by Wisconsin Physicians Service Health Insurance stated: "*[P]er Hayes Search and Summary* (evidence-based guidelines) there is insufficient evidence in peer-reviewed literature to support its use at this time" (emphasis added).

59. At least one plan referenced above offers health insurance coverage to patients in Massachusetts.

### Hayes Refuses to Correct the 2018 Report After Being Informed of Its False and Misleading Statements

60. On January 23, 2019, Alcresta, through its counsel, sent Hayes a letter identifying a number of materially false and misleading statements in the 2018 Report, and requesting that Hayes correct the Report. For example, Alcresta identified the Report's false statements about RELiZORB's CE Marking and provided Hayes with RELiZORB's CE Marking number. Alcresta also identified the Report's false statements that private insurers did not cover RELiZORB and

explained that 136 insurers do provide coverage.  Alcresta also identified the Report's false statements with respect to CMS coverage, and identified the CMS billing code for RELiZORB.

61.     On February 4, 2019, Hayes agreed to reconsider its 2018 Report and invited Alcresta to submit any additional information Alcresta would like Hayes to consider.

62.     On February 7, 2019, Alcresta provided Hayes with additional information demonstrating the falsities in the 2018 Report.  For example, Alcresta provided Hayes a list of the dozens of hospitals that have placed RELiZORB on formulary, additional information relating to research on RELiZORB, and additional information on the new CMS billing code for RELiZORB.

63.     On March 1, 2019, Hayes sent Alcresta a letter stating that it would not "withdraw or amend" the 2018 Report.

64.     On information and belief, patients and Alcresta continue to be harmed, and will continue to be harmed in the future, every time an insurer denies coverage for RELiZORB based in whole or in part on Hayes's false and misleading Reports and every time a doctor decides not to prescribe RELiZORB to a patient because that patient's insurer will not provide insurance coverage.

### COUNT I
### (Commercial Disparagement)

65.     Alcresta incorporates the allegations contained in paragraphs 1-64 as if fully set forth herein.

66.     Through its multiple Search & Summary Reports, Hayes has published false and misleading statements concerning RELiZORB to third parties.

67.     Hayes has knowledge of the falsity of its statements.  It holds itself out as an expert in analyzing available information, and therefore knew or should have known of the falsity of the statements in the 2018 Report.  In addition, Alcresta brought those false and misleading statements

to Hayes's attention on January 23, 2019.  Nevertheless, Hayes refused to withdraw or correct its Report, and continues publishing it today.

68.     As a result of the Hayes's disparagement, private insurers have refused to cover RELiZORB, causing substantial damage to Alcresta.  That was foreseeable given the 2018 Report's statement that it "will be used for support of coverage determinations[.]"

## COUNT II
### (Intentional Interference with Advantageous Business Relations)

69.     Alcresta incorporates the allegations contained in paragraphs 1-68 as if fully set forth herein.

70.     Before and at the time Hayes published the Reports, Alcresta had present and prospective advantageous business relations with patients, third-party payers, wholesale distributors, and pharmacies.

71.     At the times Hayes published those Reports, it had knowledge of those advantageous economic relations.  Hayes holds itself out as an expert in analyzing available information and knew that its Reports would be used by third-party payers in making coverage determinations.  On January 23, 2019, Alcresta expressly notified Hayes of the false and misleading statements in the 2018 Report and that third-party payers were relying on the Report to deny coverage of RELiZORB.  Nevertheless, Hayes refused to withdraw or correct the Report, and persists in publishing the Report.

72.     Hayes's publication of the Reports, and subsequent failure to correct its misstatements, was improper in motive or means, and has interfered with Alcresta's advantageous relations with third-party payers and has otherwise caused Alcresta substantial pecuniary harm and damage.

## PRAYER FOR RELIEF

WHEREFORE, Alcresta respectfully requests that this Court:

1.   Enter judgment for Alcresta on all Counts;

2.   Award Alcresta its actual damages, together with pre- and post-judgment interest;

3.   Enter a permanent injunction restraining Hayes from continuing to publish false and misleading statements about RELiZORB;

4.   Award such other relief as the Court deems just and proper.

## JURY DEMAND

Alcresta demands a trial by jury on all issues so triable.

DATE:  April 23, 2019                    Respectfully submitted,

ALCRESTA THERAPEUTICS, INC.

By its attorneys,

*/s/ John J. Butts*
John J. Butts (BBO No. 643201)
Michelle Liszt Sandals (BBO No. 690642)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
john.butts@wilmerhale.com